1  SIMON ARON (State Bar No. 108183)
     saron@wrslawyers.com
2  JOHNNY WHITE (State Bar No. 269306)
     jwhite@wrslawyers.com
3  WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
   11400 West Olympic Boulevard, 9th Floor
4  Los Angeles, California 90064-1582
   Telephone:   (310) 478-4100
5  Facsimile:    (310) 479-1422

6  Attorneys for Kevin Singer, Court Appointed
   Receiver and Alleged Debtor's Authorized
7  Representative

8              UNITED STATES BANKRUPTCY COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11  In re                              Case No. 20-51587

12  PLATINUM ROOFING, INC.,            Chapter 7

13              Debtor.                **NOTICE OF MOTION AND MOTION
                                       OF PLATINUM ROOFING, INC. FOR
14                                     DISMISSAL FOR CAUSE  OR, IN THE
                                       ALTERNATIVE, FOR ABSTENTION
15                                     FROM, THIS INVOLUNTARY CASE;
                                       DECLARATIONS OF KEVIN SINGER
16                                     AND SIMON ARON IN SUPPORT
                                       THEREOF**

17                                     Judge:  Hon. M. Elaine Hammond

18
                                       Date:   December 17, 2020
19                                     Time:   10:00 a.m.
                                       Place:  Courtroom 11
20                                             280 South First Street
                                               San Jose, California 95113
21

22  **TO THE HONORABLE M. ELAINE HAMMOND, UNITED STATES**

23  **BANKRUPTCY JUDGE, PETITIONING CREDITORS BAY AREA ROOFERS**

24  **HEALTH & WELFARE TRUST FUND, PACIFIC COAST ROOFERS PENSION**

25  **PLAN, BAY AREA COUNTIES ROOFING INDUSTRY APPRENTICESHIP**

26  **TRAINING FUND, AND THEIR COUNSEL OF RECORD, THE OFFICE OF THE**

27  **UNITED STATES TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

28

**PLEASE TAKE NOTICE** that on December 17, 2020, at 10:00 a.m., the Honorable M. Elaine Hammond, United States Bankruptcy Judge for the Northern District of California, will hold a hearing in Courtroom 11 of the above-captioned Court to consider the motion to dismiss (the "Motion") filed herein by Platinum Roofing Inc. ("Platinum") by and through its Superior Court-appointed receiver and authorized representative, Kevin Singer (the "Receiver"). The Receiver seeks dismissal for cause pursuant to 11 U.S.C. §§ 105, 303, and 1112, and Fed. R. Bankr. P. 1003, or in the alternative dismissal or abstention pursuant to 11 U.S.C. §§ 305(a)(1).

The Motion is based on the following Memorandum of Points and Authorities, the concurrently filed declarations of Kevin Singer and Simon Aron and Request for Judicial Notice, as well as all pleadings, papers and records on file with the Court, and such other evidence, oral or documentary, as may be presented to the Court in connection with the Motion and the hearing thereon.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), any opposition to this Motion must be filed with the Clerk of the United States Bankruptcy Court and be served upon counsel for the Receiver at the address located in the upper left-hand corner of the first page of this Notice by no later than fourteen (14) days prior to the hearing on this Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(h), the failure to file and serve a timely response to this Motion may be deemed by the Court to be consent to the granting of the relief requested in this Motion.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

43353052.1                                          2

1      **WHEREFORE**, the Receiver respectfully requests that the Court issue an order

2   dismissing this case or, in the alternative, abstaining from hearing this case.

3                                              Respectfully submitted,

4   DATED: November 23, 2020          WOLF, RIFKIN, SHAPIRO,
                                      SCHULMAN & RABKIN, LLP
5

6

7                                     By:  _____ / s / Simon Aron _____

8                                          SIMON ARON
                                           Attorneys for Kevin Singer, Court Appointed
9                                          Receiver and Alleged Debtor's Authorized
                                           Representative
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4333052.1                                    -3-

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................. 7

II.    FACTUAL BACKGROUND ................................................ 8

       A.    The State Court Receivership ................................... 8

       B.    The Trust Funds' District Court Action. ................... 9

       C.    Platinum's Liquidation. .......................................... 10

       D.    The Involuntary Petition ........................................ 11

III.   ARGUMENT ...................................................................... 11

       A.    The Petition Should Be Dismissed .......................... 11

             1.    The Involuntary Petition Has an Evident Ulterior Motivation Unconnected to Any Legitimate Bankruptcy Purpose ...................... 12

             2.    Liquidation or Reorganization is Not in Any Way Realistic ............ 13

       B.    In the Alternative, the Court Should Dismiss or Abstain Under 11 U.S.C. § 305(a)(1) Because the Bankruptcy is Not in the Best Interests of the Debtor and Its Creditors ........................................ 15

       C.    Reservation of Rights Under 11 U.S.C. § 303(i) ........................... 16

IV.    CONCLUSION ................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Barber v. Westbay (In re Integrated Agri, Inc.)*
  313 B.R. 419 (Bankr. C.D. Ill. 2004) ................................................................. 14

*Crawford v. Bell*
  599 F.2d 890 (9th Cir. 1979) .............................................................................. 12

*Graham v. Yoder Mach. Sales (In re Weldon F. Stump & Co.)*
  373 B.R. 823 (Bankr. N.D. Ohio 2007) ............................................................. 15

*In re ABQ-MCB Joint Venture*
  153 B.R. 338 (Bankr. D.N.M. 1993) ................................................................. 14

*In re Arnold*
  806 F.2d 937 (9th Cir. 1986) .............................................................................. 13

*In re Caucus Distribs., Inc.*
  106 B.R. 890 (Bankr. E.D. Va. 1989) ............................................................... 12

*In re Colonial Ford, Inc.*
  24 B.R. 1014 (Bankr. D. Utah 1982) ................................................................. 15

*In re Dumas*
  19 B.R. 676 (Bankr.9th Cir. 1982) ..................................................................... 12

*In re ELRS Loss Mitigation, LLC*
  325 B.R. 604 (Bankr. N.D. Okla. 2005) ............................................................ 16

*In re Feinstein Family P'ship*
  247 B.R. 502 (Bankr. M.D. Fla. 2000) .............................................................. 14

*In re Fremont Battery Co.*
  73 B.R. 277 (Bankr. N.D. Ohio 1987) ............................................................... 14

*In re Int'l Zinc Coatings & Chem. Corp.*
  355 B.R. 76 (Bankr. N.D. Ill. 2006) .................................................................. 16

*In re Jr. Food Mart of Ark., Inc.*
  241 B.R. 423 (Bankr. E.D. Ark. 1999) .............................................................. 12

*In re Silberkraus*
  253 B.R. 890 (Bankr. CD. Cal. 2000), *aff'd*, 336 F.3d 864 (9th Cir. 2003) ........... 12

*In re WLB-RSK Venture*
  296 B.R. 509 (Bankr. C.D. Cal. 2003), *aff'd*, 320 B.R. 221 (B.A.P. 9th Cir.
  2004), *aff'd*, 223 Fed. Appx. 555 (9th Cir. 2007) ............................................. 11

*Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.)*
  61 B.R. 614 (B.A.P. 9th Cir. 1986) .................................................................... 12

*Kukui Gardens Corp. v. Holco Capital Group, Inc.*
    675 F.Supp.2d 1016 (D.Haw. 2009)........................................................ 12

*Matter of Little Creek Dev. Co.*
    779 F.2d 1068 (5th Cir. 1986)............................................................ 13

*Middel v. Jake's on the Pike (In re Jake's on the Pike)*
    78 B.R. 461 (Bankr. E.D. Va. 1987)...................................................... 11

*Wechsler v. Macke Int'l Trade (In re Macke Int'l Trade)*
    370 B.R. 236 (B.A.P. 9th Cir. 2007)...................................................... 14

**<u>STATUTES</u>**

11 U.S.C. § 1112 ................................................................................... 11

11 U.S.C. § 303 ...................................................................................... 9

11 U.S.C. § 303(i) ............................................................................. 16, 17

11 U.S.C. § 305 ..................................................................................... 17

11 U.S.C. § 305(a)(1) ......................................................................... 8, 15

11 U.S.C. § 362(a) ................................................................................. 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

In response to the imminent issuance of an Order to Show Cause re Contempt (the "OSC") against the three petitioning creditors, they filed an involuntary petition in an attempt to avoid the Superior Court for the County of Santa Clara (the "Superior Court") finding each of them in contempt of court for violating the Order appointing Kevin Singer as receiver (the "Receiver") over the assets and affairs of Platinum Roofing Inc. ("Platinum"). Platinum, the alleged debtor, has been in receivership since November 2019. The Receiver has been liquidating the assets of Platinum in accordance with the Orders of the Superior Court and over the last nine to ten (9-10) months has closed Platinum's business and liquidated all of its tangible assets. The primary, if not only, asset remaining to be liquidated is Platinum's accounts receivable, which the Receiver has been actively trying to collect despite the interference of the three petitioning creditors and their counsel.

The three petitioners are: Bay Area Roofers Health & Welfare Trust Fund; Pacific Coast Roofers Pension Plan; East Bay-North Bay Roofers Vacation Trust Fund; Bay Area Counties Roofing Industry Promotion Fund; and Bay Area Counties Roofing Industry Apprenticeship Training Fund (collectively the "Trusts"). The Trusts, together with Douglas Ziegler and William Callahan (collectively the "Trustees," and together with the Trusts, the "Trust Funds") were the subject of an application by the Receiver for issuance of the OSC by the Superior Court, which application was granted on October 15, 2020. A true and correct copy of the Superior Court's Minute Order is attached hereto as Exhibit "F" to the Receiver's Request for Judicial Notice (the "RJN").

Moreover, Platinum's assets are substantially over-encumbered. The secured claims of Pacific Mercantile Bank ("PMB") exceeds $3.6 million. *See,* RJN, Exhibit "A." Unsecured creditors, including the potential claims of the Trust Funds, will likely not be paid from the proceeds of Platinum's assets. This problem cannot be fixed by a bankruptcy proceeding, where the administrative costs would only further deplete the

1  funds available.  There is no basis for believing that a debtor-in-possession[1] or a trustee

2  could somehow put the estate on a more favorable footing.

3         Thus, the involuntary petition would rightly be dismissed irrespective of the Trust

4  Funds' transparent purpose in filing.  However, the Trust Funds' clear intent and strategy

5  to delay and interfere with the Superior Court's jurisdiction and OSC demonstrates beyond

6  all question that their petition was filed in bad faith.

7         In short, this involuntary petition was filed in clear bad faith, which separately

8  constitutes cause for its dismissal.  Equally, 11 U.S.C. § 305(a)(1) provides an alternative

9  legal basis for dismissal because the interests of creditors and the alleged debtor would be

10 better served by dismissal and liquidating the remaining assets of Platinum through the

11 receivership under the supervision of the Superior Court.  For this and all of the reasons

12 discussed below, this case should be immediately dismissed, with the Court retaining

13 jurisdiction to enter a judgment against the Petitioning Creditors for costs, attorneys' fees

14 and punitive damages.

15 **II.    FACTUAL BACKGROUND**

16       **A.    The State Court Receivership**

17       On November 5, 2019, Plaintiff Pacific Mercantile Bank ("Plaintiff") filed a

18 Complaint against Platinum, Case No. 19-cv-358158 (the "Receivership Action"). (RJN,

19 Exhibit "A").

20       On November 18, 2019, this Court signed the Stipulated Order (the "Receivership

21 Order") appointing the Receiver. (RJN, Exhibit "B").

22       On December 6, 2019, this Court granted further instructions to the Receiver

23 concerning actions if the company is insolvent or unable to pay its debts. (RJN, Exhibit

24 "C").

25

26 _____

27       [1] Pursuant to the supplemental order entered December 6, 2019, the Receiver was specifically authorized to file a bankruptcy petition if, in his judgment, it would be the appropriate process to wind up the affairs of Platinum. RJN, Exhibit "C".

28

4355052.1                                    -8-

On July 22, 2020, the Receiver filed an Application for Order to Show Cause re Contempt for Violation of the November 18, 2019 Appointment Order, or in the Alternative, Motion for an Order to Enforce the November 18, 2019 Appointment Order. (RJN, Exhibit "D").

On September 30, 2020, the Trust Funds filed their Special Appearance for the Sole Purpose of Contesting Personal Jurisdiction. (RJN, Exhibit "E").

On October 15, 2020, the Superior Court granted the Application to issue the OSC against the Trust Funds. (RJN, Exhibit "F").

On October 30, 2020, the Trust Funds filed the involuntary petition commencing this case under Section 303 of the Bankruptcy Code (11 U.S.C. §303).

On or about November 2, 2020, the Trust Funds filed a Notice of Stay of Proceedings; Attachment 3.a. to Notice of Stay of Proceedings in the Superior Court. (RJN, Exhibit "G").

**B.      The Trust Funds' District Court Action**

On October 18, 2019, the Trust Funds commenced an action against Platinum before the United States District Court for the Northern District of California, which was docketed as Case No. 3:19-cv-06765 (the "**District Court Action**").  (RJN, Exhibit "H"). On or about March 6, 2020, Platinum's counsel in the District Court Action withdrew as counsel pursuant to an order of the District Court. *Id.*

On July 9, 2020, the Trust Funds filed a Motion seeking to join the Receiver as a party to the District Court Action. *Id*.  The Receiver filed his Opposition thereto on July 23, 2020. *Id*.  On September 22, 2020, the District Court vacated the hearing and took the matter under submission.  *Id*.

On November 5, 2020, the Trust Funds filed a Notice of Pendency of Other Action or Proceeding and Notice of Stay, enclosing a copy of the Involuntary Petition, and thereafter the District Court entered its Order staying the District Court Action and scheduling a Case Management Conference for July 8, 2021. *Id*.

4335052.1

## C.  Platinum's Liquidation

When the Receiver took possession of the assets of Platinum, the business was operating.  Declaration of Kevin Singer (the "**Receiver's Decl.**"), ¶ 4.  After analyzing the situation, in February of 2020, the Receiver made business decision to close operations and begin liquidating its assets for the benefit of creditors, primarily its secured creditor PMB. *Id.*  Over the following months, the Receiver liquidated all of the tangible assets of Platinum.  Receiver's Decl., ¶ 5.  As of approximately September 1, 2020, the only remaining  asset of Platinum was its accounts receivable.  *Id.*

Commencing in or around January/February of 2020, the Trust Funds began executing a plan to interfere with the Receiver's efforts to liquidate and collect the remaining accounts receivable of Platinum.  Receiver's Decl., ¶ 6. The Receiver attempted to work through these efforts providing the Trust Funds with current financial statements for Platinum and stating that all collections of accounts receivable would be held pending an agreement or further order of the Superior Court directing the disbursement thereof. *Id.* The Trust Funds refused to cooperate and continued to purposefully interfere with the Receiver's discharge of his duties under the Appointment Order. *Id.*

On February 14, 2020, counsel to the Receiver advised the Trust Funds that their actions violated the terms of the Appointment Order. Aron Decl., ¶ 2 and Exhibit "2" hereto.  Months of discussions and negotiations over a possible solution ensued with no agreement by the Trust Funds to cease interfering with the Receiver's duties.  Aron Decl., ¶ 3.  After exhausting efforts to resolve the matter, on  July 22, 2020, the Receiver filed the Application (RJN, Exhibit "D"), together with the Declaration of Kevin Singer, Sean Marzola and a Request for Judicial Notice in support thereof.

On October 15, 2020, the Superior Court granted the Application and directed Receiver's counsel to prepare and submit a proposed Order to Show Cause re Contempt directed to the Trust Funds with a return date of December 10, 2020.  Aron Decl., ¶ 5 and Exhibit "F."  On or about October 30, 2020, the Receiver submitted the OSC to the Superior Court.  Aron Decl., ¶ 6 and Exhibit "3" hereto.

### D.    The Involuntary Petition

On October 30, 2020, the Trust Funds filed and served their involuntary petition against Platinum.  Even before a summons was issued, the Trust Funds filed a notice of stay in the Superior Court. Aron Decl., ¶ 7 and RJN, Exhibit "G."

On November 6, 2020, after learning of the involuntary petition, counsel for the Receiver wrote to counsel for the Trust Funds demanding that the petition be withdrawn. A true and correct copy of that letter is attached to the Aron Decl., as Exhibit "4."

On November 12, 2020, counsel to the Trust Funds responded rejecting the Receiver's request. Aron Decl., Exhibit "5."

## III.    ARGUMENT

### A.    The Petition Should Be Dismissed

While the Bankruptcy Code does not recite specific grounds for dismissal of an involuntary case, it is well established that such cases should be dismissed upon a showing of appropriate cause, especially bad faith by petitioning creditors.  *See, e.g., In re WLB-RSK Venture,* 296 B.R. 509, 513 (Bankr. C.D. Cal. 2003), *aff'd,* 320 B.R. 221 (B.A.P. 9th Cir. 2004), *aff'd,* 223 Fed. Appx. 555 (9th Cir. 2007) ("an involuntary petition can be dismissed for bad faith, and numerous cases support the proposition that bankruptcy petitions of any kind should not be employed for improper purposes.").  Involuntary bankruptcy is unavailable to creditors with unclean hands.  *See e.g. Middel v. Jake's on the Pike (In re Jake's on the Pike),* 78 B.R. 461, 463 (Bankr. E.D. Va. 1987) ("The familiar maxim that 'he who comes into equity must come with clean hands' means that a litigant cannot call upon a court of equity to grant him extraordinary relief if he himself has been guilty of inequitable or unconscionable conduct. The 'unclean hands' doctrine has been applied to deny petitioning creditors relief in the Bankruptcy Courts." (citations omitted)); 11 U.S.C. § 1112 (requiring dismissal of a Chapter 11 for cause if dismissal is in the best interests of creditors).

Courts in the Ninth Circuit rely upon a fact-specific "objective" test for a bad faith involuntary, which examines whether a reasonable person would resort to the bankruptcy

43350521.1
11

process under similar circumstances. *See, e.g. Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.),* 61 B.R. 614, 620 (B.A.P. 9th Cir. 1986). This test does not ignore the Trust Funds' actual motivations, however, as such motivations may be tellingly juxtaposed with how a reasonable person would have acted. Since courts often lack directly incriminating evidence, "it is the more usual situation that courts must surmise the petitioning creditor's intent based upon the circumstances of the case." *In re Caucus Distribs., Inc.,* 106 B.R. 890, 926 (Bankr. E.D. Va. 1989).

> 1.   The Involuntary Petition Has an Evident Ulterior Motivation
>       Unconnected to Any Legitimate Bankruptcy Purpose

"[I]t constitutes bad faith to file bankruptcy to impede, delay, forum shop, or obtain a tactical advantage regarding litigation ongoing in nonbankruptcy forum - whether that nonbankruptcy forum is a state court or a federal district court." *In re Silberkraus*, 253 B.R. 890, 905 (Bankr. CD. Cal. 2000), *aff'd*, 336 F.3d 864 (9th Cir. 2003). While the driving force behind the Trust Funds' bankruptcy petition may not yet be understood, it is safe to surmise that the Trust Funds are seeking to avoid the Superior Court ruling on the OSC and are now hoping for a different decision by the bankruptcy court.[2]

Whichever it is, the petition smacks of bad faith and forum shopping that serves no legitimate bankruptcy purpose. *See e.g., Crawford v. Bell,* 599 F.2d 890, 893 (9th Cir. 1979) (noting that "increasing calendar congestion in the federal courts makes it imperative to avoid concurrent litigation in more than one forum" and instructing courts to decline jurisdiction over matters already pending in another court that "can achieve the same result"); *In re Jr. Food Mart of Ark., Inc.,* 241 B.R. 423, 427 (Bankr. E.D. Ark. 1999) ("[Dissatisfaction with another court's rulings, or the perceived untimeliness of rulings, is

---

[2] The Trust Funds' strategy in filing the Involuntary Petition is also flawed since and no stay applies generally to the creditors of the alleged debtor [11 U.S.C. §362(a)] and no stay applies to the OSC to be issued by the Superior Court [*Kukui Gardens Corp. v. Holco Capital Group, Inc.*, 675 F.Supp.2d 1016, 1025-1026 (D.Haw. 2009); *In re Dumas*, 19 B.R. 676, 676. (Bankr.9th Cir. 1982) ("This appeal raises the question of whether a post-bankruptcy request to enter sentence for a pre-bankruptcy contempt violates the automatic stay of 11 U.S.C. § 362. We hold that it does not ….")].

1  not a reason to file a bankruptcy case. Indeed, such a filing may constitute an abuse of the

2  bankruptcy process. It is not the province of the bankruptcy court to either oversee or

3  manage a case more properly within the purview of [other] courts simply because a party

4  to litigation is dissatisfied for procedural or other reasons.").

5      Further, counsel to the Trust Funds' response to the Receiver's demand to dismiss

6  this improper involuntary petition belies a fundamental misunderstanding or ignorance of

7  both bankruptcy and receivership law and practice which confirms that this filing was

8  purely strategic and not in good faith.

9                  2.    Liquidation or Reorganization is Not in Any Way Realistic

10     "Findings of lack of good faith. . . have been predicated on certain recurring but

11  non-exclusive patterns, and they are based on a conglomerate of factors rather than on any

12  single datum.  Several, but not all, of the following conditions usually exist.  The debtor

13  has one asset, such as a tract of undeveloped or developed real property. The secured

14  creditors' liens encumber this tract.  There are generally no employees except for the

15  principals, little or no cash flow, and no available sources of income to sustain a plan of

16  reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361,

17  362(d)(1), 363(e), or 364(d)(1)." *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072–73

18  (5th Cir. 1986); *see also In re Arnold,* 806 F.2d 937, 939 (9th Cir. 1986) (adopting *Little*

19  *Creek's* list of "bad faith" filing factors).

20     Most if not all of the *Little Creek* factors are present here.  Platinum is for all intents

21  and purposes a single asset debtor at this point.  It has no operations and all tangible assets

22  have been liquidated leaving only remaining accounts receivable to collect.[3]  Even before

23  the business was closed, there would not have been enough ongoing business remotely

24  capable of powering a reorganization beneficial to unsecured creditors here given that the

25  liens of PMB already exceed $3.5 million.  Thus, pursuing the fantasy that reorganization

26

27

_____

[3] The Receiver has been collecting Platinum's accounts receivable but for the interference of the Trust Funds.

28

4335052.1

would have been feasible would only harm those creditors that will recover something from Platinum's remaining assets and was the basis of the Receiver's decision not to file a reorganization proceeding even though he was empowered to do so.  Receiver's Decl., ¶ 4.

More importantly, Platinum's bankruptcy would inevitably involve a process that substantially tracks the path of the existing receivership, only with more administrative expense and less chance of recouping equivalent value.

For these reasons, this case does not belong in Chapter 7.  *See, e.g., Wechsler v. Macke Int'l Trade (In re Macke Int'l Trade),* 370 B.R. 236, 243 (B.A.P. 9th Cir. 2007) (affirming dismissal where business could not be reorganized and "continuation of this case would only lead to administrative expenses, and would be a waste of judicial resources"); *In re ABQ-MCB Joint Venture,* 153 B.R. 338, 342 (Bankr. D.N.M. 1993) ("It is not beneficial or economical for this Court to oversee this bankruptcy estate, which has no assets other than the fully [encumbered property."); *accord also, Barber v. Westbay (In re Integrated Agri, Inc.),* 313 B.R. 419, 425 (Bankr. C.D. 111. 2004) ("It is well settled that it is improper for a bankruptcy trustee to liquidate property solely for the benefit of secured creditors."); *In re Feinstein Family P'ship,* 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000) (explaining why trustees should not "act as a liquidating agent for secured creditors who should liquidate their own collateral"); *In re Fremont Battery Co.,* 73 B.R. 277, 279 (Bankr. N.D. Ohio 1987) (denying motion to auction debtor's assets when only secured creditor would benefit since such a sale would constitute "an abuse of chapter 11 bankruptcy").

Whether this bankruptcy was filed solely as an attempt to avoid the jurisdiction of the Superior Court, the Trust Funds and their counsel were obliged to, and failed to, consider the interests of all creditors.  It is unfortunate that not all of Platinum's creditors can be paid, but the perfect cannot be the enemy of the good.  A lot of value is being recouped through the Receiver's efforts and that value will only be distributed in

-14-

4335052.1

accordance with the orders of the Superior Court.[4]  A neutral fiduciary, the Receiver, has determined that the collection of Platinum's remaining assets is in the creditors' collective best interests.  The Superior Court has determined that the Trust Funds should be called upon to show cause why they should not be held accountable for their interference with the Receiver's duties and the Appointment Order. What is abundantly clear is that the Petitioning Creditors have shown an inexcusable disregard for that Court and the collective interest of creditors.  Their conduct is objectively unreasonable and amounts to bad faith.

**B.**	**In the Alternative, the Court Should Dismiss or Abstain Under 11 U.S.C. § 305(a)(1) Because the Bankruptcy is Not in the Best Interests of the Debtor and Its Creditors**

Bankruptcy Code section 305(a)(1) allows the Court to dismiss or "suspend" a bankruptcy case if "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). While "Congress intended the court to exercise considerable discretion in sifting and weighing grounds for dismissal under Section 305(a)(1)," (*In re Colonial Ford, Inc.,* 24 B.R. 1014, 1021 (Bankr. D. Utah 1982)), the Court applies that discretion against the backdrop of the "prime congressional policy underlying the abstention doctrine of § 305(a)," which "is to prevent the commencement and continuation of disruptive involuntary cases." *See Graham v. Yoder Mach. Sales (In re Weldon F. Stump & Co.),* 373 B.R. 823, 828 (Bankr. N.D. Ohio 2007).

In focusing section 305(a)(l)'s broad language, courts have articulated lists of relevant factors affecting whether dismissal would serve the debtor and its creditors, which generally include:

> (1) the motivation of the parties seeking bankruptcy jurisdiction;
>
> (2) whether another forum is available to the parties, particularly via a pending proceeding;

---

[4] Much like bankruptcy cases, receivership cases are completed upon the filing and approval of a receiver's final report and account, which details the proposed distribution of funds from the receivership estate.

4333032.1

1               (3) the economy and efficiency of administration; and

2               (4) the prejudice to the parties.

3    *See, e.g. In re ELRS Loss Mitigation, LLC*, 325 B.R. 604, 634 (Bankr. N.D. Okla. 2005)

4          Each of these factors is present here.  First, the Trust Funds have obviously

5    improper motivations, which are addressed above.  Second, the state court receivership is

6    an adequate and preexisting forum for maximizing the value of Platinum's remaining

7    assets for creditors, and that proceeding is now at a very advanced stage.  Third, the

8    receivership has progressed to a point where it makes absolutely no sense from an

9    efficiency standpoint to shift matters into bankruptcy court and start again from scratch.

10   The endpoint of any responsibly managed bankruptcy proceeding would be a virtual mirror

11   image of the receivership, in which Platinum's assets would be sold free and clear liens.

12   The only material difference would be that creditors could expect another layer of

13   administrative expense.  Fourth, the expenditure of additional expenses by the Receiver

14   and those arising from a bankruptcy proceeding are prejudicial to the interests of creditors.

15         In short, there is no viable strategy that justifies a Chapter 7 filing or any disruption

16   of the receivership's current trajectory.  The assets of the estate are fully encumbered, and

17   their administration has been substantially achieved already.  No collective purpose would

18   be accomplished by a bankruptcy since the asset distribution in bankruptcy would (at best)

19   be the same as that outside of bankruptcy.  The only agenda served is the individualistic

20   and illegitimate agenda of the Trust Funds, who are desperately attempting to avoid the

21   Superior Court's OSC.  "A bankruptcy case filed or maintained purely for some party's

22   procedural ends, one having no purpose cognizable under the bankruptcy laws, should be

23   dismissed under section 305(a)(1)." *In re Int'l Zinc Coatings & Chem. Corp.*, 355 B.R. 76,

24   86 (Bankr. N.D. Ill. 2006).  As such, the Court should exercise its discretion and dismiss

25   this unnecessary bankruptcy case.

26   **C.**     **Reservation of Rights Under 11 U.S.C. § 303(i)**

27         Any reasonable person would have declined to put Platinum into bankruptcy in the

28   current circumstances.  The bankruptcy has no legitimate purpose.  The Court should make

-16-

43353052.1

1  an affirmative finding of bad faith, dismiss this case, and schedule a hearing to determine

2  the judgment to be paid by the Trust Funds pursuant to Bankruptcy Code section 303(i).

3  ## IV. CONCLUSION

4        For the reasons presented above, the Receiver respectfully urges the Court to enter

5  an order (i) dismissing this involuntary case for cause, including, but not limited to, Trust

6  Funds' manifest bad faith in filing the involuntary petition given the underlying

7  circumstances, or, in the alternative, (ii) dismissing or abstaining from this involuntary

8  case pursuant to 11 U.S.C. § 305 and,(iii) in either case reserving the Receiver's right to

9  seek a judgment under 11 U.S.C. §303(i).

10                     Respectfully submitted,

11  DATED: November 23, 2020     WOLF, RIFKIN, SHAPIRO,
12                     SCHULMAN & RABKIN, LLP

13

14                     By:       / s / Simon Aron
15                        SIMON ARON
16                     Attorneys for Kevin Singer, Court Appointed
                   Receiver and Alleged Debtor's Authorized
17                     Representative

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF KEVIN SINGER

I, Kevin Singer, declare as follows:

1. I am the court-appointed receiver for the alleged debtor in this proceeding, Platinum Roofing, Inc. ("Platinum") and I have authority to file this declaration and oppose this involuntary petition on its behalf. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein.

2. I was appointed the Receiver over Platinum's assets and operations on November 18, 2019. I have as acted as Superior Court receiver and referee in over 415 cases in the last twenty (20) years. A true and correct copy of my *curriculum vitae* is attached hereto as Exhibit "1".

3. On December 6, 2019, the Court granted me the further authority to file a bankruptcy petition on behalf of Platinum if, in my business judgment, it would be the appropriate process to wind up the affairs.

4. When I took possession of the assets of Platinum, the business was operating. However, after analyzing the situation, in February of 2020, I made the business decision to close operations and begin liquidating its assets for the benefit of creditors, primarily its secured creditor Pacific Mercantile Bank, the plaintiff in the Superior Court action.

    a. Over the following months, I have liquidated all of the tangible assets of Platinum. As of approximately October 1, 2020, the only remaining asset of Platinum was accounts receivable in the aggregate amount of approximately $3,640,323.81, of which I believe approximately $1,120,000 is likely collectible.

5. Commencing in or around January or February of 2020, the Trust Funds began interfering with my efforts to liquidate and collect the remaining accounts receivable of Platinum. Even before engaging my counsel, I attempted to work through these efforts providing the Trust Funds with current financial statements for Platinum and stating that all collections of accounts receivable would be held pending an agreement or further order

43350521.1

1   of the Superior Court directing the disbursement thereof. The Trust Funds refused to

2   cooperate and continued to purposely interfere with the discharge of my duties under the

3   order appointing me.

4          6.     On November 2, 2020, after learning of the involuntary petition, my counsel

5   wrote to each of the Trust Funds demanding that the petition be withdrawn.

6          7.     Since the filing of the involuntary petition, at least one account debtor has

7   refused to respond to my demands for payment based upon the existence of the involuntary

8   petition.

9          8.     As of the time of filing this Motion, the Trust Funds have refused to

10   withdraw the involuntary petition.

11         I declare under penalty of perjury under the laws of the United States of America

12   that the foregoing is true and correct.

13         Executed November 23, 2020, at Los Angeles, California.

14

15

16                            Kevin Singer

17

18

19

20

21

22

23

24

25

26

27

28

4355052.1

## DECLARATION OF SIMON ARON

I, Simon Aron, declare as follows:

1.     I am an attorney duly admitted to practice before this Court.  I am Of Counsel to the law firm of Wolf, Rifkin, Shapiro, Schulman & Rabkin LLP, attorneys of record for Kevin Singer, Court Appointed Receiver and Alleged Debtor's Authorized Representative (the "Receiver").  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

2.     On February 14, 2020, I sent the email attached hereto as Exhibit "2" to Tanisha M. Shafer (Arata) of Neyhart, Anderson, Flynn & Grosboll, counsel to Trust Funds.

3.     Over the next several months, the Receiver, his counsel and the Trust Funds had discussions and negotiations over a possible solution, but no agreement ensued and the Trust Funds continued interfering with the Receiver's duties.

4.     On  July 22, 2020, the Receiver filed an application in the Superior Court seeking the issuance of an order requiring the Trust Funds to show cause why they should not be held in contempt of court for interfering with the Court's order.

5.     On October 15, 2020, the Superior Court granted the Application and directed my office to prepare and submit a proposed Order to Show Cause re Contempt directed to the Trust Funds with a return date of December 10, 2020.

6.     On or about October 30, 2020, the Receiver submitted the OSC to the Superior Court, a true and correct copy of which is attached hereto as Exhibit "3".

7.     On October 30, 2020, the Trust Funds filed their involuntary petition against Platinum.  Even before a summons was issued, the Trust Funds served a notice of stay of the Superior Court action.

8.     On November 6, 2020, after learning of the involuntary petition, I sent the letter attached hereto as Exhibit "4" to Ms. Arata on behalf of the Trust Funds.

1       9.     On November 12, 2020, I received the letter attached hereto as Exhibit "5"

2  from Ms. Arata on behalf of the Trust Funds.

3       I declare under penalty of perjury under the laws of the United States of America

4  that the foregoing is true and correct.

5       Executed November 23, 2020, at Los Angeles, California.

6

7                           / s / Simon Aron

8                           Simon Aron

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28