William J. Flynn, SBN 95371
Tanisha M. Shafer (Arata), SBN 280588
NEYHART, ANDERSON, FLYNN & GROSBOLL
369 Pine Street, Suite 800
San Francisco, CA 94104-3323
Tel. (415) 677-9440 ext. 102
Fax (415) 677-9445
wflynn@neyhartlaw.com; tarata@neyhartlaw.com
**Attorneys for Petitioning Creditors**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Jose Division)

| | |
|---|---|
| DEBTOR<br><br>IN RE PLATINUM ROOFING, INC., a California Corporation, | Bk. No. 20-51587<br><br>Chapter 7<br><br>Judge: Honorable M. Elaine Hammond<br><br>MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PETITIONING CREDITORS' OPPOSITION TO MOTIONS TO DISMISS FILED BY STATE COURT RECEIVER (KEVIN SINGER) AND PACIFIC MERCANTILE BANK AND IN SUPPORT OF REQUEST FOR ORDER FOR RELIEF<br><br>Petition Filed: October 30, 2020<br><br>Hearing: January 7, 2021 9:00am<br><br>Place: Video/Teleconference |

**MEMORANDUM OF POINTS & AUTHORITIES**

I.  INTRODUCTION

It is in the best interest of the creditors that the involuntary Chapter 7 bankruptcy case continue in the Bankruptcy Court to ensure the equal treatment of creditors. *See In re Marciano* (9th Cir. 2013) 708 F.3d 1123, 1128-29 (a central purpose of the involuntary bankruptcy laws is to "protect the threatened depletion of assets or to prevent the unequal treatment of similarly situat[ed] creditors."); *see also In re Sherman* (2007) 491 F.3d 948, 971 ("another purpose of the automatic stay is to protect creditors by providing an orderly liquidation procedure under which all creditors

are treated equally rather than a race of diligence by creditors for the debtor's assets"). The State Court Receiver, Kevin Singer, had been using the state court receivership to interfere in the petitioning creditors' constitutional and statutory lien rights—protected rights that are not punishable by contempt and cannot be enjoined. *See* Cal. Const. Art. XIV §3 (granting mechanic's lien rights); *Briggs v. Eden Council for Hope and Opportunity* (1999) 19 Cal.4th 1106, 1115 (prelitigation statements are protected); and *RGC Gaslamp, LLC v. Ehmcke Sheet Metal, Co., Inc*. (2020) 56 Cal. App. 5th 413, 437 (protected prelitigation statements include mechanic's liens); *see also Boucher v. Shaw* (9th Cir. 2009) 572 F.3d 1087. Essentially, in a mechanic's lien action, the workers are the employee benefits funds for construction workers and are taking action against landowners because the land was improved by their work. *See Hutnick v. U.S. Fid. & Guar. Co.* (1988) 47 Cal.3d 456. The Debtor, PLATINUM ROOFING, INC. ("Platinum" or "the Debtor") (as well as the State Court Receiver and the Debtor's bank, Pacific Mercantile Bank) are not parties to the lien actions.

To justify its interference, the State Court Receiver has been relying on a state court receivership order. A state court receivership order prohibiting the exercise of protected rights is void and cannot support contempt or an injunction. *See In re Berry* (1968) 68 Cal. 2d 137, 150, 156-57. However, the state court receivership action is superseded by the Bankruptcy filing.

In addition, the State Court Receiver lacks standing to contest the involuntary petition, as it has no right to payment from third-party liens. *See In re Marciano, supra* 708 F.3d at 1126-27 ("property interests in bankruptcy are typically defined by state law"). And, the State Court Receiver has no absolute right to respond for the Debtor. *See In re Nat'l Repub. Co.* (7th Cir. 1940) 109 F.2d 167, *cert. denied*, 309 U.S. 671, *reh. denied,* 309 U.S. 698.

When the State Court Receiver continued to pursue a contempt action against petitioning creditors in state court after receiving notice of the Chapter 7 involuntary bankruptcy petition, it

NEYHART, ANDERSON, FLYNN & GROSBOLL ATTORNEYS AT LAW

violated the automatic stay.[1] *See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n* (9th Cir.1993) 997 F.2d 581, 585 ("The stay protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others."). Given its unlawful and unfair conduct, the State Court Receiver should be estopped from contesting the involuntary Chapter 7 petition, since it did not seek or obtain relief from stay before violating it. *Id.* at 593-94.

Pacific Mercantile Bank should also be precluded from contesting the involuntary Chapter 7 petition, as a creditor. *See In re Highley* (9th Cir. 1972) 459 F.2d 554, 556 ("a creditor [like Pacific Mercantile Bank, which filed a proof of claim thus consenting to this court's jurisdiction over its claims], is not permitted to oppose an adjudication of bankruptcy in an involuntary proceeding" under §303) (bracketed language added). Both the State Court Receiver and Pacific Mercantile Bank are precluded from seeking dismissal of the involuntary Chapter 7 petition because the Code already addresses the relief sought by allowing relief from stay. *See In re Sherman*, *supra* 491 F.3d at 975.

Even if the Debtor's bank and the State Court Receiver could contest the involuntary Chapter 7 petition,[2] the state court receivership action is not a viable alternative to an involuntary bankruptcy case since Bankruptcy priorities are different then state court receivership priorities. *See In re Baldwin Builders* (9th Cir. B.A.P. 1999) 232 B.R. 406, 412 (one of the "fundamental objectives of the automatic stay" is "preserving the relative priorities of creditors, pending a distribution of estate assets". In Bankruptcy, trust funds get priority for employee benefits contributions under 11 U.S.C. §507(a)(5). Due to the foregoing, the Court should DENY the Motions to Dismiss and enter an

---

[1] The state court injunction (or order to show cause) was signed by a state court judge in the state receivership action on November 30, 2020, and an attempted service of that order to show cause occurred on December 1, 2020. Declaration of Sandy Stephenson ("Stephenson DCN") ¶7. This order was void due to the automatic stay, among other reasons. *See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n* (9th Cir.1993) 997 F.2d 581, 585, 593-94 (violations of the stay are void *ab initio*).

[2] That is, if this Bankruptcy Court finds they have standing and are not equitably estopped.

2

Neyhart, Anderson, Flynn & Grosboll
Attorneys at Law

Order for Relief since the involuntary Chapter 7 petition is valid, and denying the motions will ensure the fair and equitable treatment of *all* creditors.

## II. FACTS & PROCEDURAL HISTORY

The Board of Trustees of the Bay Area Roofers Trust Funds was established under the Labor Management Relations Act, 1947 ("LMRA"), 29 U.S.C. §141 et seq., is composed of 50% management appointed trustees and 50% union appointed trustees. Declaration of Robert Rios ("Rios DCN") ¶2. The Trust Funds are governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq. Rios DCN ¶3. The Board of Trustees has a fiduciary duty to collect fringe benefits contributions that include employee benefits contributions for pension benefits, medical benefits and vacation pay—a type of wage—for all "covered work" performed by a signatory employer's employees. Rios DCN ¶¶6-9. "Covered work" is described in the relevant Collective Bargaining Agreements ("the CBAs"). Rios DCN ¶7. The CBAs are the contracts that govern the conditions of roofers working for employers who are signatory to those contracts. *Id*. The terms of the CBAs require the timely payment of monthly fringe benefits contributions to be submitted to the Trust Funds for fringe benefits (aka "employee benefits") for covered employees. Rios DCN ¶9. The Debtor is bound to the CBAs. Rios DCN ¶8.

Under California state law, one who improves real property can seek a remedy from the landowner.[3] The Debtor is not a party to such actions.

The Debtor submitted some fringe benefit contributions for 2017, and in 2018 through 2019, but it stopped submitting contributions in early 2019.[4] Stephenson DCN ¶5. After March 2019, fringe benefit contributions paid by third parties were submitted to the Trust Funds. *Id*.

---

[3] Public works projects are handled a little differently, but the Debtor is still not a party in the Petitioning Creditors' claims under the public works stop notice and payment bond statutes.
[4] After that time, the Trust Funds received checks issued by third-parties pursuant to the Trust Funds' lien and bond claims, totaling approximately $563,000. *See* Stephenson DCN ¶5. Applying that amount, as lessening the amounts owed by the Debtor, the total amount owing for principal (through the March 2019 work month) and interest is over $1.7 million, and is approximately $2.5 million in principal through the February 2020 work month after credits. *See* Stephenson DCN ¶5, Capelis ¶¶4-6.

3

NEYHART, ANDERSON, FLYNN & GROSBOLL ATTORNEYS AT LAW

On February 1, 2019, Miller Kaplan, an accounting (or auditing) firm, was notified by the Board of Trustees to conduct testing on the Debtor; testing is a review of the payroll records of employers and is conducted to ensure employee benefits contributions have been submitted to the Trust Funds. Capers DCN ¶3. Mr. Capers works for the auditing firm. *See* Capers DCN ¶1. An inspection of part of the Debtor's financial records revealed $2,345,554.86 due for under-reported contributions and interest for the period August 1, 2018 through March 31, 2019. Capers DCN ¶4. This amount was calculated by adding $2,062,886.46 in principal to $282,668.40 in interest, with interest calculated through January 23, 2020. *Id.* The audit was finalized based on the records Miller Kaplan had access to, since all records were not provided by the Debtor. Capers DCN ¶5. Miller Kaplan also reviewed records that the Debtor submitted to the Trust Funds showing hours underreported, or untimely reported, to the Trust Funds for a variety of projects, including hours worked after March 31, 2019. Capers DCN ¶6. The hours underreported (beyond March 31, 2019) totaled more than 16,000 hours. *See id.*[5] The checks issued by third parties covered fringe benefit contributions calculations based on these 16,000 hours. *See* Capers DCN ¶6; Stephenson DCN ¶5.

On October 30, 2020, three of the Trust Funds filed an involuntary Chapter 7 bankruptcy petition seeking an order for relief in this Bankruptcy Court. ECF#1. On November 4, 2020, service of process was executed. ECF#6. On December 1, 2020, the Trust Funds received, by hand delivery, a FAMILY LAW FORM FL-410, signed on November 30, 2020 by a judge of the Superior Court of California, County of Santa Clara. Stephenson DCN ¶7. Prior to that, the Trust Funds had not personally received papers—by hand delivery or otherwise—from the Debtor, Kevin Singer, or Pacific Mercantile Bank that were issued or signed by the Santa Clara Superior Court. On December 9, 2020, the Petitioning Creditors requested the Clerk of the Bankruptcy Court and/or Bankruptcy Court to enter default. ECF#19. On December 9, 2020, the State Court Receiver opposed the request for entry of default. ECF#17.

---

[5] Therefore, the audit showing $2,345,554.86 due does not reflect additional amounts due for the 16,000 plus hours. *See id.*

NEYHART, ANDERSON, FLYNN & GROSBOLL
ATTORNEYS AT LAW

4

## III. STANDARD

A dismissal of an involuntary Chapter 7 petition that is regular on its face, by a moving party with the requisite standing,[6] on the basis that the petitioning creditors engaged in misconduct requires that the movant show there are no other Bankruptcy Code sections that contemplate the type of misconduct alleged. *In re QDOS, Inc.* (B.A.P. 9th Cir. 2019) 607 B.R. 338, 345 ("In many cases, a bankruptcy court will not be able to dismiss an involuntary case solely on a motion to dismiss. If the petitioning creditors plausibly allege that they have met the standards, the [§303 dismissal] motion must fail, and the involuntary debtor must answer"); *In re Sherman, supra* 491 F.3d at 969-75 (Where the misconduct alleged in filing a Chapter 7 petition for the purpose of stopping prepetition litigation or collection efforts is contemplated by a specific provision other than §707(a), such misconduct may not constitute "cause" under the dismissal statute.).[7] If dismissal is sought under §305(a),[8] then there must be a further finding that dismissal of the involuntary petition is in the best interest of the debtor and the creditors. 11 U.S.C. §305(a). Dismissal is not in the best

---

[6] The moving party must have constitutional standing (injury in fact; causation; and redressability). *See Sherman, supra* 491 F.3d at 956-57. Under §303(j) only a petitioning creditor may contest an involuntary petition. Under §502(a) a "party-in-interest" may object to a claim; and, under §§1112(b), 1208(c), and 1307(c) any "party-in-interest" may request that the court, after notice and a hearing, dismiss a case "for cause" when the bankruptcy is filed under Chapters 11, 12, and 13 respectively. Under §305(a) the Bankruptcy Court, after notice and hearing, may on its own dismiss a case under Title 11, or may suspend all proceedings in a case under Title 11, at any time, if [ ] the interests of the creditor and the debtor would be better served by such dismissal or suspension of a petition. Under §707, a debtor may seek damages after seeking and obtaining a dismissal of a Chapter 7 involuntary petition. *Matter of 8Speed8, Inc.* (9th Cir. 2019) 921 F.3d 1193, 1195 ("only putative debtor has standing under §303(i); *In re Miles* (9th Cir. 2005) 430 F3d 1083, 1093-94 (alleged debtor's wife and children had no standing to pursue damage award against petitioning creditors for "bad faith" involuntary filing since only putative debtor has standing under §303(i).). Creditors completely lack standing to oppose an involuntary bankruptcy petition under §303. *See In re Highley, supra* 459 F.2d at 556 ("The right of creditors to file an answer and oppose an involuntary bankruptcy has been eliminated… A creditor should not be permitted to oppose an adjudication; invariably, the motive of such a creditor is to protect a preference or to retain some other undue advantage at the expense of other creditors, contrary to the fundamental purpose of the Act–an equitable distribution among all creditors.")

[7] Protection against illegitimate filings of petitions are already provided for in the Bankruptcy Code, such as under §§362 and 727. *In re Sherman, supra* 491 F.3d 971.

[8] Dismissal under 11 U.S.C. §305 may be brought by the Bankruptcy Court, on its own, within 60 days of the first meeting of the creditors and requires notice and a hearing. *See* FRBP 1017(e).

interest of the creditors if it will result in the unequal treatment of creditors. *See In re Marciano, supra* 708 F.3d at 1128-29. If the movant fails to make the required showing, and the requirements for Order for Relief are met, then the Court must enter an Order for Relief. *In re QDOS, supra* 607 B.R. at 345. In a motion to dismiss, the facts are construed in the light most favorable to the non-moving party. *In re QDOS, supra* 607 B.R. at 345.[9]

## IV. ARGUMENT

### A. UNDER BANKRUPTCY LAW, THE PETITION WAS PROPER.

A petition is regular on its face when: (1) there are three or more creditors; (2) the three creditors hold claims against the debtor that are not contingent as to liability if there are more than twelve creditors; (3) the claims are not subject to a bona fide dispute; (4) the aggregate sum of the claim is at least $16,750; and (5) the Debtor has not paid debts as they become due. *See In re Marciano, supra* 708 F.3d at 1128 (citing §303). The Motions to Dismiss fail to show the standard was not met, and the standard for a valid involuntary Chapter 7 petition under §303 is met.

First, there are three or more creditors that filed the involuntary Chapter 7 petition—and at least three more trust fund creditors that could join in the petition—with claims for approximately $2.4 million in principal and interest for work performed through March 31, 2019. After adding amounts to the Trust Funds' claims for work performed after March 31, 2019 there is approximately $2.9 million due to the Trust Funds, before credits (and before adding fees and costs, and additional interest). Second, the Trust Funds hold claims that are not contingent as to liability, since liability

---

[9] "The Bankruptcy Code does not expressly provide for dismissal of an otherwise proper involuntary petition because of the subjective 'bad faith' of the filers." *In re Marciano, supra* 708 F.3d at 1129. Bad faith is not relevant unless consequential and punitive damages are under consideration. *Id.* As the standard shows: (1) whether reorganization can be sustained, or whether there can be a payment plan is irrelevant in determining whether to dismiss a *Chapter 7* involuntary bankruptcy case; (2) the assets alleged to exist by a custodian and/or creditor contesting an involuntary petition is not relevant in determining whether to dismiss a *Chapter 7* involuntary bankruptcy, especially when the assets alleged are based on a self-serving statement and dismissal will result in the unequal treatment of creditors. Moreover, a custodian, like a state court receiver, may not have access to (or have accessed) the same assets and other property of a bankruptcy estate.

is under a CBA, so it does not matter whether or not there are more than twelve creditors. Third, the claims are not subject to a bona fide dispute since liability is based on a contract, and also since the only contestants—State Court Receiver and Pacific Mercantile Bank—have no right to payment. *See In re Marciano, supra* 708 F.3d at 1127-28 (There is an objective basis for the validity of petitioning creditors' claims when the debtor's liability is pursuant to a contract); *id.* at 1126-27 ("property interests in bankruptcy are typically defined by state law").

Fourth, the Trust Funds' claims are well in excess of the requirement in §303 as the claims total approximately $2.9 million before credits and offsets. *See In re Seko* (9th Cir. 1998) 156 3d. 1005, 1008-09 (there is no bona fide dispute for a valid claim, or valid counter-claim, that results in a set-off or credit of the petitioning creditors' claims which does not eliminate or reduce the claims below $16,750).[10] Further, insofar as the amounts that the Trust Funds received from liens against third parties are owed to the Debtor, the Bankruptcy Estate is the proper estate that would collect those funds. Fifth, the Debtor is not paying debts as they become due, shown by the state court receiver who was appointed, and further shown by the Trust Funds liens. The standard for an Order for Relief is met.[11]

### B. THE TRUST FUNDS ARE FREE UNDER STATE LAW TO EXCERCISE THEIR RIGHTS AGAINST THIRD PARTIES.

The Trust Funds have a statutory right to pursue mechanic's liens and stop payment notices. Cal. Civ. Code §§8024(b), 9100(a)(2). Mechanic's liens attach to real property or works of improvement, and bond claims attach to the bond the surety posted for public works projects. Cal. Const. Art. XIV §3; Cal. Civ. Code §8440 (lien attaches to the work of improvement or real

---

[10] The State Court Receiver cites an unpublished opinion to allege a bona fide dispute exists: *In re WLB-RSK Venture* (C.D. Cal 2003), 296 B.R. 509. However, there can be no bona fide dispute when the party opposing the involuntary petition lacks any right to payment under the substantive law.

[11] Under §305(a), the Bankruptcy Court—on its own—may dismiss, suspend, or abstain from a case if such dismissal, suspension, or abstention is in the best interest of the debtor and all creditors. If there will be unequal treatment of creditors—such as creditors that exercised their lien rights—by a state court receiver, then it is not in the best interest of all creditors to dismiss, suspend, or abstain an involuntary bankruptcy case. *In re Sherman, supra* 491 F.3d at 971.

7

Neyhart, Anderson, Flynn & Grosboll
Attorneys at Law

property); *Hutnick, supra* 47 Cal.3d at 463 (mechanics lien attaches to the property); Cal. Civ. Code §9358. Accordingly, notwithstanding a state court receivership, the Trust Funds can either lien a private project, or stop notice (or file a bond claim) as to a public works project—separate remedies that are independent of Platinum, the Debtor.[12] The Trust Funds may be paid fringe benefit contributions directly by the general contractor, the property owner, or the owner's release of lien bond surety, and such payments would not be in violation of the state court receivership, as they are owed directly to the Trust Funds. *See Hutnick, supra* 47 Cal.3d 456, 463.[13]

This is true of a bankruptcy proceeding, since mechanic's liens are against the property owner and bond actions (for works with payment bonds) are against the bond companies (or "sureties"); thus, the Trust Funds' claims (and the related actions) are not against the Debtor, and the Debtor is not a party. The Debtor lacks standing under §§303, 305, 707, and 1112. *See Boucher v. Shaw*, *supra* 572 F.3d at 1092-93 (automatic stay does not protect non-debtor parties or their property, including "actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor."). Accordingly, notwithstanding the involuntary bankruptcy petition, the Trust Funds may pursue any mechanic's lien claims, stop notice claims, and payment bond claims without violating the stay.

### C. BANKRUPTCY PRIORITY IS DIFFERENT THAN ONE BEFORE A STATE COURT RECEIVER.

In Bankruptcy, priority is different than one before a State Court Receiver; in some circumstances, trust funds get priority in bankruptcy. *See In re Baldwin Builders, supra* 232 B.R. at 412; 11 U.S.C. §507(a)(5) (giving trust funds priority). The characterization of claims in

---

[12] The Trust Funds are laborers within the meaning of Cal. Civ. Code §8024, citing Cal. Civ. Code §1773.1, which defines "laborer" to include Trust Funds.
[13] Another theory for general contractor's liability directly to the Trust Funds (without regard to the Debtor or the state court receivership) arises under California Labor Code §218.7, which establishes direct contractor liability for its subcontractors' failure to pay fringe benefit contributions due for covered work performed on qualifying projects. Cal. Labor Code §218.7(a)(3) ("The direct contractor or any other person shall not evade, or commit any other act that negates the requirements of this section.").

Neyhart, Anderson, Flynn & Grosboll
Attorneys at Law

Case: 20-51587    Doc# 22    Filed: 12/24/20    Entered: 12/24/20 13:50:44    Page 9 of 10

Bankruptcy may affect the distribution for the creditors that is different than the distribution for creditors in the state court receivership action. *See* 11 U.S.C.§506(a)(1).[14] Plus, a Bankruptcy estate may contain property and interests that would otherwise be unreachable for unsecured creditors. *See* 11 U.S.C. §541 (Bankruptcy estate includes all legal interest and equitable interest, which can include causes of action and claims—like claims based on alter-ego liability and double-breasted entity liability). Given the differences between bankruptcy and state remedies, there is no guarantee that the petitioning creditors and other similarly situated creditors (such as other trust funds and creditors with third-party lien rights) will get equal treatment in the state court receivership action. *See In re Marciano, supra* 708 F.3d at 1128-29. It appears that the petitioning creditors are not going to receive equal treatment in state court given the State Court Receiver's interference.

### V. CONCLUSION

The involuntary Chapter 7 petition is valid. The Debtor was properly served and the time for responding to the petition has passed. As a result, the Order for Relief should be granted. The Petitioning Creditors request the Court DENY the Motions to Dismiss and grant the requested default. This involuntary Chapter 7 petition should proceed on its merits.

Dated: December 23, 2020

Respectfully submitted,

NEYHART, ANDERSON, FLYNN & GROSBOLL

By: /s/ Tanisha M. Shafer (Arata)
Attorneys for Petitioning Creditors

---

[14] For example, under §506(a)(1) of the Bankruptcy Code, the claim is secured only to the extent of the underlying collateral value. So, when the debt is worth more than the value of the collateral, there are really two claims: a secured claim to the extent of the collateral's value, and an unsecured claim for the rest.